IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRYON FREES,                 :

       Plaintiff,            :     Case No. 3:09-cv-301

       vs.                  :

PIONEER CREDIT RECOVERY, INC.,   :    JUDGE WALTER HERBERT RICE
   *et al.*,

                            :

       Defendants

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART DEFENDANT PIONEER CREDIT RECOVERY INC.'S MOTION FOR
SUMMARY JUDGMENT (DOC. #54); SUSTAINING DEFENDANT
SALLIE MAE INC.'S MOTION FOR SUMMARY JUDGMENT (DOC.
#55)

---

After Plaintiff Bryon Frees defaulted on his student loan, his account was
turned over to Pioneer Credit Recovery, Inc. ("Pioneer"), a debt collector.
Ultimately, his wages were garnished and his federal income tax refunds were
seized. Frees then filed suit against Pioneer and against Sallie Mae, Inc. ("Sallie
Mae"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15
U.S.C. §1692a *et seq.*, and the Higher Education Act of 1965 ("HEA"), 20 U.S.C.
§1095a.[1]

---

[1] Plaintiff also asserted other claims against ITT Technical Institute and the
United States Department of Education, but those claims have since been
dismissed. Docs. ##48, 65.

This matter is currently before the Court on Pioneer's motion for summary judgment (Doc. #54) and Sallie Mae's motion for summary judgment (Doc. #55).

**I.     Background and Procedural History**

In 1995, Bryon Frees graduated from ITT Technical Institute after completing the Heating, Air Conditioning, and Refrigeration Program.  To finance his education, he took out student loans.  Am. Verified Compl., Doc. #40, at ¶7.  The loans were made by NBD Bank, N.A., and guaranteed by United Student Aid Funds, Inc. ("USA Funds").  Frees later defaulted on his loans and, in December of 2004, USA Funds paid the claims to NBD Bank.  Dreyer Aff. ¶4.

Sallie Mae Post Claims Assistance services student loans for guarantee agencies, including USA Funds, and provides customer service to borrowers who have defaulted on their loans. *Id.* at ¶¶3,5.  In the years following Frees' default, Sallie Mae responded to several inquiries he made concerning his student loans. *Id.* at ¶6; Ex. 1 to Dreyer Aff.

On September 8, 2008, Sallie Mae notified Frees that USA Funds, the guarantor, had turned his account over to a collection agency, and that the United States Department of Education had requested that all or part of his federal tax refund or other federal payments that were owed to him be seized to reduce the debt.  Am. Verified Compl. at ¶¶14-15; Ex. 1 to Dreyer Aff.

Pioneer, the collection agency, first contacted Frees in writing on January 28, 2009.  Frees was told that unless he notified Pioneer in writing within 30 days

2

that he disputed the validity of the debt or any portion of it, it would be deemed valid. Webb Aff. ¶5; Ex. 2 to Webb Aff. On February 5, 2009, and February 9, 2009, Pioneer spoke to Frees about repayment options and the possibility of wage garnishment. Webb Aff. ¶ 6.

On February 13, 2009, Frees notified Pioneer that he did dispute the validity of the debt. Webb Aff. ¶7; Ex. 3 to Webb Aff. On February 16, 2009, Pioneer informed Frees how to obtain a copy of his signed Promissory Note and a full statement of the account in dispute. Webb Aff. ¶8; Ex. 4 to Webb Aff. Pioneer's subsequent attempts to reach Frees by telephone were unsuccessful. Webb Aff. ¶9.

On March 6, 2009, Pioneer sent Frees a Notice Prior to Wage Withholding, informing him that if he failed to establish a written repayment agreement with Pioneer within 30 days, Pioneer would proceed with wage garnishment proceedings. The Notice also informed Frees of his right to a hearing. In response to this Notice, Frees requested a hearing, disputing the amount of the balance owed. Webb Aff. ¶10; Ex. 5 to Webb Aff. At Frees' request, Pioneer sent him copies of documents related to his account. Webb Aff. ¶¶11-12. Frees thereafter participated in the hearing, which was held on April 24, 2009.

On April 28, 2009, an Administrative Law Judge found that Frees had failed to establish a credible challenge to either the existence or the amount of the debt. The judge therefore found that Pioneer was entitled to order Frees' employer to

3

garnish 15% of his wages pursuant to 20 U.S.C. § 1095a. The judge noted, however, that Pioneer had agreed to hold the garnishment order in abeyance, pending Frees' compliance with a voluntary payment plan whereby he would make monthly payments of $112.75. Ex. 9 to Webb Aff.

On May 7, 2009, Frees phoned Pioneer about the proposed rehabilitation agreement. As references, he provided Pioneer with contact information for his brother, Todd Frees, and landlord, Jean Montgomery. Frees promised to return the signed rehabilitation agreement within 24 hours. Webb Aff. ¶17. When he failed to do so, Pioneer attempted on numerous occasions to contact Frees by phone, but was unable to reach him. On May 13, 2009, Pioneer contacted Todd Frees, who did not know his brother's whereabouts. Pioneer also tried to contact Jean Montgomery, but was unable to reach her on that date. Webb Aff. ¶¶19-20.

On June 25, 2009, because Frees had not yet returned the signed rehabilitation agreement, and because repeated attempts to reach him had been unsuccessful, Pioneer sent an order directing Securitas Security, Frees' employer, to garnish 15% of his wages. Webb Aff. ¶23; Ex. 10 to Webb Aff.

Frees, proceeding *pro se*, first filed suit on August 14, 2009. He subsequently obtained counsel and filed an Amended Verified Complaint, Doc. #40, alleging that Pioneer and Sallie Mae violated the Fair Debt Collection Practices Act ("FDCPA"), and the wage garnishment provisions of the Higher Education Act of 1965 ("HEA"), 20 U.S.C. § 1095a. Pioneer and Sallie Mae have filed motions for

4

summary judgment.  Docs. ##54, 55.  Those motions are now fully briefed.

## II.   Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324.  "The plaintiff must present more than a

5

scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S.

6

1091 (1990); *see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561

(7th Cir. 1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir.

1992), *cert. denied*, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the

district court a duty to sift through the record in search of evidence to support a

party's opposition to summary judgment . . . ."). If it so chooses, however, the

court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

## III.    Analysis

As an initial matter, the Court notes that in support of his memoranda in

opposition to the two motions for summary judgment, Frees relies solely on his

Amended Verified Complaint. He has submitted no other affidavits and no other

evidence. As the Sixth Circuit has explained, "[a]lthough statements in a verified

complaint may function as the equivalent of affidavit statements for purposes of

summary judgment, affidavit statements must be based on personal knowledge."

They must also set forth facts that would be admissible in evidence, and show that

the affiant is competent to testify about the matter asserted. *Weberg v. Franks*,

229 F.3d 514, 526 n.13 (6th Cir. 2000) (internal citation omitted). In addition,

legal conclusions contained in a verified complaint do not suffice to create a

genuine issue of material fact for trial. *FRC Int'l, Inc. v. United States*, 278 F.3d

641, 643 (6th Cir. 2002). With these principles in mind, the Court turns to the

pending motions.

7

**A.    Pioneer's Motion for Summary Judgment**

**1.    Fair Debt Collection Practices Act ("FDCPA")**

**a.    Debt Collection Efforts**

The FDCPA provides, in pertinent part:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

* * *

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

15 U.S.C. §1692d.

Under the FDCPA, a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. §1692a(6).  It appears to be undisputed that Pioneer falls within this definition.

**i)    Frequency of Phone Calls**

Frees' Amended Verified Complaint alleges that Pioneer "violated 15 U.S.C. 1692d by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass," calling him more than 77 times in less than 8 months.  Am. Verified Compl. ¶23.

8

Pioneer admits that between January and August of 2009, it attempted to telephone Frees approximately 77 times in order to amicably resolve his account. Webb Aff. ¶26. Pioneer argues, however, that this many phone calls, spread over the course of 8 months cannot be described as "repeated" or "continuous." Pioneer also denies that it made the calls "with intent to annoy, abuse, or harass" Frees. Rather, Pioneer maintains that it was simply making a legitimate attempt to reach him in order to work out an amicable agreement and avoid wage garnishment. Pioneer kept trying, but Frees was repeatedly unavailable. Pioneer further maintains that Frees' conclusory statement that Pioneer acted "with intent to annoy, abuse, or harass" is insufficient to create a genuine issue of material fact.

Under the FDCPA, however, the debt collector's "intent" is generally a question of fact for the jury. *See Holland v. Bureau of Collection Recovery*, 801 F. Supp.2d 1340, 1342 (M.D. Fla. 2011). Direct evidence of intent is rarely available, but intent "may be inferred by examining the nature and frequency of debt collection calls." *Id.* (citing *Meadows v. Franklin Collection Serv.*, 414 F. App'x 230 (11th Cir. 2011)). The pattern of calls may also be considered. *See Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp.2d 492, 505-06 (D. Md. 2004) (holding that the reasonableness of 26-28 calls in a two-month period, including 3 calls within 5 hours on the same day, was a question of fact for the jury).

9

In this case, Pioneer has submitted its call log, showing the dates and times it tried to contact Frees. Ex. 1 to Webb Aff. Because of the somewhat cryptic nature of the coding system used in the call log, however, it is not clear from the record whether Pioneer actually made contact with Frees during those calls, or left any messages for him. In the Court's view, there is a genuine dispute of material fact concerning whether the volume of calls made by Pioneer was reasonable, and whether the nature, frequency, and pattern of calls shows an intent to annoy, abuse, or harass Frees. Summary judgment on this portion of the FDCPA claim is therefore inappropriate.

### ii)      Contact with Third Parties

Frees also alleges that Pioneer violated subsection (5) by contacting his brother and his landlord more than once, without his consent, in connection with the collection of the alleged debts. Am. Verified Compl. ¶23. Pioneer notes, however, that Frees specifically provided their names as references on May 7, 2009, when he was discussing the proposed rehabilitation agreement. Webb Aff. ¶17.

Pioneer further notes that the FDCPA specifically allows debt collectors to contact third parties "for the purpose of acquiring location information about the consumer." 15 U.S.C. §1692b. Debt collectors are generally prohibited from "communicat[ing]" with any third party more than once unless requested to do so by that person or unless the debt collector reasonably believes that an earlier

response is erroneous or incomplete and that the third party now has correct or complete location information. *See* 15 U.S.C. §1692b(3).

After Frees failed to return the rehabilitation agreement as promised, Pioneer admittedly attempted to contact his brother and his landlord in order to try to locate Frees. Pioneer's call log indicates that Pioneer contacted Todd just once, on May 13, 2009, at which time Todd indicated that he had not seen his brother in a few months and had no other phone number for him. Webb Aff. ¶19; Ex. 1 to Webb Aff., at 15-16. The call log also indicates that Pioneer attempted to contact Jean Montgomery on May 13, 2009, and again on May 19, 2009, but there was no answer either time and Pioneer left no message for her. Ex. 1 to Webb Aff. at 16. On June 8, 2009, Pioneer was able to finally reach Montgomery, who promised to tell Frees that Pioneer was trying to contact him. *Id.* at 18.

Frees has presented no evidence to support the statement in his Amended Verified Complaint that Pioneer actually "communicated" with either of these individuals on more than one occasion. Nor does he indicate that his statement is based on personal knowledge. Under the circumstances presented here, the Court finds no genuine dispute as to any material fact concerning Frees' allegation that Pioneer communicated with Todd Frees or Jean Montgomery on more than one occasion. Pioneer is therefore entitled to summary judgment on this portion of the claim.

11

b.    **Validation of Debt**

Frees next alleges that Pioneer violated the FDCPA by failing to validate the

alleged debt.  Am. Verified Compl. ¶24.  The FDCPA provides that if the consumer

notifies the debt collector that any portion of the debt is disputed, debt collection

efforts must cease "until the debt collector obtains verification of the debt or a

copy of a judgment, or the name and address of the original creditor, and a copy of

such verification or judgment, or name and address of the original creditor, is

mailed to the consumer."  15 U.S.C. §1692g(b).[2]

In its motion for summary judgment, Pioneer notes that after Frees notified

Pioneer that he was disputing the debt, Pioneer sent him the name of USA Funds,

Inc., and told him how to obtain copies of his Promissory Note and account

information.  Webb Aff. ¶8; Ex. 4 to Webb Aff.  Frees, in his Response to Request

for Admission, No. 3, admitted that he received this information from Pioneer.  Ex.

B to Doc. #54.

Frees' verified statement, that Pioneer failed to validate the debt as required,

is clearly contradicted by the record and by his own subsequent admissions.  Under

these circumstances, the Court need not consider it.  *See Scott v. Harris*, 550 U.S.

372, 380 (2007) ("When opposing parties tell two different stories, one of which

is blatantly contradicted by the record, so that no reasonable jury could believe it, a

court should not adopt that version of the facts for purposes of ruling on a motion

_____

[2] The Amended Verified Complaint incorrectly cites to 15 U.S.C. §1692f.

for summary judgment.").

Moreover, Frees did nothing to refute Pioneer's argument in his response to the motion for summary judgment. For these reasons, the Court finds that there is no genuine dispute of material fact, and Pioneer is entitled to judgment as a matter of law on this portion of Frees' FDCPA claim.

### 2. Higher Education Act ("HEA")

The HEA provides that a guaranty agency "may garnish the disposable pay of an individual to collect the amount owed by the individual" who is in default on a student loan, provided, in relevant part, that:

> (1) the amount deducted for any pay period may not exceed 15 percent of disposable pay, except that a greater percentage may be deducted with the written consent of the individual involved;
>
> (2) the individual shall be provided written notice, sent by mail to the individual's last known address, a minimum of 30 days prior to the initiation of proceedings, from the guaranty agency or the Secretary, as appropriate, informing such individual of the nature and amount of the loan obligation to be collected, the intention of the guaranty agency or the Secretary, as appropriate, to initiate proceedings to collect the debt through deductions from pay, and an explanation of the rights of the individual under this section;
>
> (3) the individual shall be provided an opportunity to inspect and copy records relating to the debt; [and]
>
> (4) the individual shall be provided an opportunity to enter into a written agreement with the guaranty agency or the Secretary, under terms agreeable to the Secretary, or the head of the guaranty agency or his designee, as appropriate, to establish a schedule for the repayment of the debt[.]

20 U.S.C. § 1095a(a). Frees alleges that Pioneer violated subsections (1) through

13

(4) of this statute.  Am. Verified Compl. at ¶¶27-30.

Pioneer argues that summary judgment is appropriate because Frees has not established any genuine issue of material fact concerning any of these allegations. With respect to the alleged violation of subsection (1), Pioneer notes that its wage garnishment order, issued to Frees' employer, Securitas Security, plainly stated that the employer should deduct "an amount not to exceed fifteen percent (15%) of the debtor's disposable pay for each pay period."  Ex. 10 to Webb Aff.

Frees has presented no pay stubs or other evidence showing that more than this was actually deducted from his paycheck.  But even if the employer defied Pioneer's order, and did deduct more than 15% of Frees' disposable wages, there would appear to be no basis for holding Pioneer liable for the employer's misstep. Under these circumstances, the Court finds no genuine dispute of material fact.  As to the alleged violation of subsection (1), the Court concludes that Pioneer is entitled to summary judgment.

Frees also alleges that Pioneer violated subsection (2) of §1095a(a) by failing to send timely notice of the nature and amount of the loan obligation, its intention to initiate wage garnishment proceedings, and an explanation of his rights.  Pioneer notes, however, that Frees has admitted that he received the Notice Prior to Wage Withholding dated March 6, 2009.  Resp. to Req. for Admis., No. 4.  That Notice clearly sets forth the balance owed on the defaulted student loan, and states that unless Frees enters into a written repayment agreement with

14

Pioneer within 30 days, his employer would be ordered to garnish 15% of his disposable wages. The Notice further informs him of his right to inspect copies of records related to the debt, and his right to a hearing.     Ex. 5 to Webb Aff.

The Administrative Law Judge specifically found that the Notice Prior to Wage Withholding was timely and complied with the requirements of §1095a. Ex. 9 to Webb Aff. In fact, it was in response to this Notice that Frees requested copies of account documents, and requested a hearing. In light of the Administrative Law Judge's findings and Frees' own admissions, Frees' verified statement is insufficient to create a genuine dispute of material fact concerning Pioneer's alleged violation of subsection (2). Summary judgment is therefore warranted.

Likewise, with respect to the alleged violation of subsection (3), failure to provide Frees with the opportunity to inspect and copy the records related to his debt, Frees has subsequently admitted that he received copies of records related to his account. Resp. to Req. for Admis., No. 6. Again, in light of this admission, the Court finds no genuine dispute of material fact.

The final allegation, that Frees was not given an opportunity to enter into a written agreement to establish a schedule for repayment of the student loan debt as required by subsection (4), is contradicted by Webb's affidavit and by the March 6, 2009, Notice Prior to Wage Withholding which, as noted earlier, indicated that if Frees did not establish a written repayment agreement with Pioneer within 30

15

days, wage garnishment proceedings would be initiated. Again, Frees admits that

he received this Notice. Resp. to Req. for Admis., No. 4.

Moreover, the Administrative Law Judge's Order indicates that Pioneer had

agreed to provide Frees with the opportunity to make monthly payments in

conjunction with his request to participate in the Federal Loan Rehabilitation

Program, and that the wage garnishment order would be held in abeyance pending

Frees' compliance with the voluntary payment plan. Ex. 9 to Webb Aff. Once

again, in light of this contradictory evidence, the Court finds that Frees' verified

statement is insufficient to create a genuine dispute of material fact.

The Court therefore sustains in full Pioneer's motion for summary judgment

with respect to Frees' alleged violations of the HEA.

**B.  Sallie Mae's Motion for Summary Judgment**

**1.  FDCPA**

The FDCPA also prohibits "debt collectors" from using "any false, deceptive,

or misleading representation or means in connection with the collection of any

debt." 15 U.S.C. §1692e. Certain specific conduct constitutes a violation of this

statute, including the "false representation or implication that the debt collector is

vouched for, bonded by, or affiliated with the United States . . . " 15 U.S.C.

§1692e(1).


Frees alleges that Sallie Mae violated §1692e(1), implying that it was

16

affiliated with the United States, when it notified him that the U.S. Department of Education had requested that his federal income tax refunds be seized.  Am. Verified Compl. ¶24.  Frees further alleges that Sallie Mae, along with Pioneer, failed to validate the alleged debts as required by 15 U.S.C. §1692g(b).

In its motion for summary judgment, Sallie Mae argues that because it is not a "debt collector," as that term is defined under the FDCPA, it is not subject to liability under that statute.  In the alternative, Sallie Mae argues that the claims fail on the merits.  The Court sustains Sallie Mae's motion on the first ground asserted.

As noted earlier, under the FDCPA, a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. §1692a(6).  The term "debt collector," however, does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person."  15 U.S.C. §1692a(6)(F)(iii).

Frees argues that because Sallie Mae began servicing his loan after it was already in default, Sallie Mae should be deemed a "debt collector."  This argument lacks merit.  As explained by Kevin Dreyer, Sallie Mae's Managing Director and Associate General Counsel, Sallie Mae Post Claims Assistance services student

17

loans for guarantee agencies such as USA Funds.  It simply provides customer service to borrowers who have defaulted on their student loans, sending tax statements, responding to questions from borrowers, and advising them of their rights.  Dreyer Aff. ¶¶2-3, 5-6.

Sallie Mae, however, is not a debt collector and was not involved in the collection of Frees' student loan debt.  *Id.* at ¶7.  Rather, the guarantee agency, USA Funds, turned the account over to Pioneer for debt collection.  *Id.* at ¶4.  Because Sallie Mae did not function as a "debt collector" on Frees' student loan, the fact that it began servicing the loan after Frees defaulted is of no consequence.  It is not subject to the requirements of §1692e.  Sallie Mae is therefore entitled to summary judgment as a matter of law on the FDCPA claims.

### 2.    HEA

As he did with Pioneer, Frees alleges that Sallie Mae violated the HEA, 20 U.S.C. §1095a(a), by: (1) deducting more than 15% of his disposable pay without his written consent; (2) failing to provide proper notice prior to commencing wage garnishment proceedings; (3) failing to provide him with an opportunity to inspect and copy records relating to his debt; and (4) failing to provide him with an opportunity to enter into a written repayment agreement.  Am. Verified Compl. ¶¶27-30.

18

Sallie Mae argues that it is entitled to summary judgment on this claim because it was not involved in any way in the garnishment of Frees' wages. Dreyer Aff. ¶7. In the alternative, Sallie Mae argues that Frees' allegations are baseless for the same reasons asserted by Pioneer.

Again, under the circumstances presented here, Frees' verified statement, that Sallie Mae deducted more than 15% of his disposable wages and failed to comply with the HEA's procedural requirements, is insufficient to create a genuine dispute of material fact. There is no competent evidence indicating that Sallie Mae had anything to do with the wage garnishment at issue. All of the correspondence in the record concerning wage garnishment originated with either USA Funds or with Pioneer. Exs. 5-8, 10 to Webb Aff. The Court therefore sustains Sallie Mae's motion for summary judgment on the HEA claim. In the alternative, summary judgment is warranted for the reasons previously discussed.

**IV.    Conclusion**

For the reasons set forth above, Defendant Pioneer Credit Recovery, Inc.'s Motion for Summary Judgment, Doc. #54, is SUSTAINED IN PART and OVERRULED IN PART. Genuine issues of material fact preclude summary judgment on the question of whether Pioneer violated the FDCPA by making 77 phone calls in an 8-month period with the intent to annoy, abuse, or harass Frees. As to all other claims, Pioneer is entitled to summary judgment in its favor.

19

Defendant Sallie Mae, Inc.'s Motion for Summary Judgment, Doc. #55, is

SUSTAINED IN FULL.


Date:  February 23, 2012

_____
WALTER HERBERT RICE
UNITED STATES DISTRICT JUDGE


Copies to: Counsel of Record

20